59 F.3d 173
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 David L. ROWE, Plaintiff/Appellant,
v.
John HURLEY, Lenny Graves, Jim Weyman, et al., Defendants/Appellees.
 No. 94-2343.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 7, 1995.*
Decided June 22, 1995.
 
 Before Posner, Chief Judge, and Pell, and Eschbach, Circuit Judge.
 
 ORDER
 
 1
 David L. Rowe brought this action pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against various federal prison officials at the Federal Correctional Institution at Oxford, Wisconsin ("FCI-Oxford"), alleging that he was placed in administrative detention for ten months without the protection of due process. The district court granted summary judgment for the prison officials. Rowe appeals. We affirm.
 
 I. Background
 
 2
 Rowe, an inmate at FCI-Oxford, provided a urine sample to the prison staff on August 17, 1993. On August 23, 1993, Rowe was placed in administrative detention[1] pending investigation for a violation of institution rules and regulations. Rowe would remain in administrative detention for ten months. In September, prison officials learned that Rowe's urine sample had tested positive for morphine, a controlled substance, and an incident report was prepared and delivered to Rowe. The September incident report contained a typographical error concerning the urine sample number assigned to Rowe. The error was corrected the following April, 1994.
 
 
 3
 On August 30, 1993, Rowe received his first Special Housing Review by the Segregation Review Official. The Review concluded that Rowe should remain in administrative detention pending the ongoing investigation. Rowe received similar Special Housing Reviews each month through March 2, 1994. The record reflects that Rowe appeared in person for each review, except for September and January. Rowe had waived his appearance at the January review.
 
 
 4
 Rowe filed this lawsuit in February 1994, claiming that his right to due process had been violated. The district court granted summary judgment for the prison officials in May 1994, finding no due process violation. Rowe appeals.[2]
 
 II. Analysis
 
 5
 Rowe claims that the prison officials violated his due process rights by placing Rowe in administrative detention and keeping him there without adequate ongoing review. Reviewing a grant of summary judgment de novo, Home Ins. Co. v. Chicago & Northwestern Trans. Co., No. 94-3385, slip op. at 4 (7th Cir. May 23, 1995), we affirm the district court's decision.
 
 
 6
 The prison officials claim they are entitled to qualified immunity. "[W]here the affirmative defense of qualified immunity is properly raised, this court has used a two-step analysis: (1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" Wilson v. Formigoni, 42 F.3d 1060, 1064 (7th Cir. 1994) (citations omitted). "The first part of this test 'is a threshold issue' that can defeat entirely the plaintiff's claim." Id. Thus, the first question is to determine "whether the plaintiff has asserted the violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991).
 
 
 7
 Rowe contends that his right to due process was violated. However, "a court confronting a procedural due process claim must initially determine whether the government deprived a person of a protected life, liberty, or property interest as a matter of substantive law, and, only if the answer is positive will the court reach the question of whether the deprivation took place without the process that was due." Wilson, 42 F.3d at 1065 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Rowe, in essence, claims that the following four rights create a liberty interest: (1) a general right to remain in the general prison population; (2) the right to a detailed memorandum regarding his administrative detention; (3) the right to a trial-type review of his ongoing status in administrative detention; and (4) the right not to be placed in administrative detention where the prison officials had bad faith motives. Each of these alleged rights will be considered in turn.
 
 A. Placement in Administrative Detention
 
 8
 Rowe contends that he has a liberty interest in remaining in the general prison population, and this interest was deprived without due process. As a general matter, "a prisoner has no natural liberty to mingle with the general prison population." Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir. 1991); Hewitt v. Helms, 459 U.S. 460, 467-68 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). However, although there is no constitutional right to remain in the general prison population, a statute or regulation governing the prison system may create such a liberty interest. Id.
 
 
 9
 In order to create a liberty interest protectible by due process, a regulation must confer upon inmates an entitlement not to be placed in administrative detention. Smith, 946 F.2d at 1252. To create an entitlement, the regulation must be of a sufficiently mandatory character. Hewitt, 459 U.S. at 468. To be mandatory, the regulation must be binding on the prison officials; exhaustive, in the sense that if none of the criteria are satisfied the prison officials are forbidden to segregate the inmate; and definite, in the sense that none of the criteria is so open-ended that it leaves the officials with essentially limitless discretion. Smith, 946 F.2d at 1252 (citations omitted).
 
 
 10
 Rowe contends that 28 C.F.R. Sec. 541.22 provides a liberty interest for him to remain in the general prison population.[3] However, we need not decide the issue because the prison officials had legitimate reasons for Rowe's administrative detention. They placed Rowe in administrative detention pending an investigation of a violation of Bureau regulations, which was suspended due to a criminal investigation. These are legitimate reasons under the regulation and were accompanied by appropriate process: an incident report, a written response to Rowe's objection, and a monthly review of Rowe's status. See Hewitt, 459 U.S. at 472 (where regulation created a liberty interest, "petitioners were obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement."). Thus, even if Sec. 541.22 created a liberty interest, the prison officials provided all the process that was due. The facts alleged by Rowe, therefore, cannot be held to state a claim for denial of a constitutional right.
 
 
 11
 B. Notice Regarding Administrative Detention
 
 
 12
 Rowe contends that his due process rights were violated because he did not receive a detailed memorandum regarding his administrative detention. He argues that 28 C.F.R. Sec. 541.22(b) creates such a right:
 
 
 13
 The Warden shall prepare an administrative detention order detailing the reasons for placing the inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby. Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by exceptional circumstances.
 
 
 14
 We do not believe that this regulation creates a liberty interest, much less requires a detailed memorandum whenever an inmate is placed in administrative detention. At most, the regulation entitles Rowe to a detention order, which he received. Rowe's detention order explained that Rowe was in administrative detention pending an investigation of a violation of Prison Bureau regulations. Thus, there was no violation of Rowe's constitutional rights.
 
 C. Ongoing Formal Review
 
 15
 Rowe claims that the following regulation creates a liberty interest:
 
 
 16
 [T]he Segregation Review Official [SRO] will review the status of inmates housed in administrative detention. The SRO ... shall hold a hearing and review these cases formally at least every 30 days. The inmate appears at the hearing unless the inmate waives the right to appear.
 
 
 17
 28 C.F.R. Sec. 541.22(c). Rowe does not contend that the review of his status was not held every thirty days, rather he argues that the review was inadequate and that the regulation creates a liberty interest requiring a formal trial-type proceeding. We disagree. While there may be a liberty interest inherent in some review of an inmate's status, Hewitt, 459 U.S. at 477 n.9 ("Prison officials must engage in some sort of periodic review ..."), that review need only be informal and nonadversary. Id. at 476; Smith, 946 F.2d at 1254 ("we do not think that due process requires the inmate's personal presence unless the inmate can show that his presence is important to the review process ...."). The regulation at issue in Rowe's case does not require a trial-type review of an inmate's status. The prison officials in Rowe's case complied with the regulation by holding a hearing every thirty days at which Rowe appeared, and by filling out a status checklist that concluded with the reasons for Rowe's ongoing administrative detention. Thus, Rowe's constitutional rights were not violated by the absence of a formal trial-type proceeding.
 
 D. Retaliation
 
 18
 Rowe claims that the investigation was a pretext, and that the prison officials acted in bad faith and kept him in administrative segregation as retaliation against him. Even where one has no entitlement to a benefit, one cannot be deprived of it in retaliation for the exercise of constitutional rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972). However, Rowe does not specify what constitutional rights he exercised that prompted the prison officials' retaliation. Rowe has failed to produce specific nonconclusory factual allegations that establish impermissible motives on the part of the prison officials. See Elliott v. Thomas, 937 F.2d 338, 344-45 (7th Cir. 1991). Thus, he has failed to show the violation of any constitutional right.
 
 
 19
 "[P]rison officials have broad administrative and discretionary authority over the institutions they manage and lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt, 459 U.S. at 467. "Some administrative actions will make prisoners feel cheated; nevertheless, this does not give them a federal cause of action." Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991).
 
 III. Conclusion
 
 20
 Because Rowe has failed to show the violation of any constitutional right, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 "Administrative detention is the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population." 28 C.F.R. Sec. 541.22
 
 
 [2]
 In June 1994, while this appeal was pending, Rowe was released from administrative detention and was transferred to a Federal Correctional Center in Colorado
 
 
 [3]
 The regulation reads in part:
 The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or the security or orderly running of the institution and when the inmate:
 (1) Is pending a hearing for a violation of Bureau regulations;
 (2) Is pending an investigation of a violation of Bureau regulations;
 (3) Is pending an investigation or trial for a criminal act;
 (4) Is pending transfer; [or]
 (5) Requests admission to administrative detention for the inmates own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection.
 * * *
 The SRO [Segregation Review Officer] shall release an inmate from administrative detention when reasons for the placement cease to exist.
 
 
 [28]
 C.F.R. Sec. 541.22(a) - (c)(1)