Rene TELLIER, Plaintiff–Appellee,

v.

Sharon FIELDS, (Correction Officer); Defendant;

Willie Scott, (Former Warden); Susan Gerlinski, (Associate Warden); Mr. Tramel, (Captain); Jesse James, (Current Warden); Mr. Parrish, (Title Unknown); John Gibson, (Assistant Captain); Defendants–Appellants.

Docket No. 98–2249.

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1999.

Decided Nov. 01, 2000.

---

David B. Massey, Davis, Polk & Wardwell, New York, NY, (Ogden Lewis, Of Counsel) for Plaintiff–Appellee.

Jonathan Willens, Assistant United States Attorney for the Southern District of New York, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Gideon Schor, Assistant United States Attorney, Of Counsel) for Defendants–Appellants.

Before FEINBERG, PARKER, and SACK, Circuit Judges.

PARKER, Circuit Judge:

Defendants–Appellants bring this interlocutory appeal from the February 18, 1998, Opinion and Order of the United States District Court for the Southern District of New York (Kimba M. Wood, Judge), denying defendants' motion to dismiss for failure to state a claim and their motion for summary judgment. Plaintiff's complaint alleges that defendants violated his liberty interests and procedural due process rights conferred by 28 C.F.R. § 541.22 and protected by the Due Process Clause. Defendants argued below that plaintiff failed to state a cause of action, and that they are entitled to qualified immunity since no reasonable official could have known that the acts alleged by plaintiff constituted violations of clearly established rights. On appeal, defendants once again assert that plaintiff has failed to state a claim and that they are entitled to qualified immunity. For the reasons set forth below, we reject defendants' arguments and affirm the decision of the district court.

## I. BACKGROUND

Plaintiff–Appellee Rene Tellier was an inmate at the Metropolitan Correctional Center ("MCC") from November 6, 1992, until April 4, 1994, when he was transferred to the Federal Correction Institution at Otisville, New York. Prior to his transfer to MCC, which occurred following

his arraignment on federal racketeering charges, Tellier was incarcerated at Attica State Prison, where he was serving a sentence of two to six years for commercial burglary. MCC is a federal facility and defendants are all federally employed prison officials who are, or were, working at MCC while Tellier was confined there.[1]

It is undisputed that upon Tellier's arrival at MCC, he was placed in a Special Housing Unit ("SHU") because he was considered an escape risk. The exact amount of time Tellier spent in SHU is a matter of minor dispute. Both parties below, as well as the district court, calculated the time at 522 days, but on appeal the time period cited by both parties indicates a confinement of 514 days. Tellier alleges that he was neither initially informed of the reason for his placement in SHU, nor was he subsequently permitted to be heard regarding his continued confinement there.

Because this is an appeal from the denial of a summary judgment motion, we must take the facts in the light most favorable to the nonmoving party. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir.1996). According to Tellier, conditions in the SHU differ markedly from those in the general population. Inmates in the SHU are confined to their cells for 23 hours per day as opposed to six to seven hours per day, and they also have less access to the telephone, showers, recreation, the law library and certain "educational and rehabilitative programs" than do inmates in the

general population. Further, unlike inmates in the general population, Tellier was handcuffed whenever he was removed from his cell and was allowed no privacy while using the toilet.

Tellier filed a pro se complaint in this action on April 25, 1994, seeking compensatory and other damages totaling $150 per day from each defendant for his or her respective role in Tellier's continued confinement in the SHU. Tellier maintains that under 28 C.F.R. § 541.22 ("Section 541.22"), he was entitled to receive an "Administrative Detention Order" within 24 hours of his placement in SHU, which he never received. Section 541.22(b) provides:

> (b) *Administrative detention order detailing reasons for placement.* The Warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby. Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by exceptional circumstances. An order is not necessary for an inmate placed in administrative detention when this placement is a direct result of the inmate's holdover status.

28 C.F.R. § 541.22(b). Tellier also alleges that, pursuant to Section 541.22(c), defen-

---

1. Defendant Willie Scott was warden at MCC from February 1992, to August 8, 1993. Defendant Jesse James was warden at MCC from September 5, 1993, to September 3, 1994. Defendant Susan Gerlinski was Associate Warden at MCC from June 1991 to February 1992, and was responsible for oversight of Unit Management, Religious Services, Education, and Psychology. From February 1992 to June 1995, Gerlinski was Associate Warden of Transportation, and was responsible for certain aspects of administrative detention at

MCC. Defendant Glenn Trammel was Captain of the MCC from June 1990 to August 1994. Defendant John Gibson was an Assistant Captain at MCC from October 1992 to August 1993. It is unclear from the record what role Defendant Robert Parrish played at MCC. Plaintiff's amended complaint states that although plaintiff was unaware of Parrish's title or position, he was one of the individuals to whom plaintiff complained about his confinement in segregated housing.

dants were required to conduct periodic hearings before a Segregation Review Official ("SRO") to evaluate his continued confinement in the SHU, but that defendants never conducted these hearings. Section 541.22(c) provides:

(c) *Review of inmates housed in administrative detention.* (1) Except as otherwise provided in paragraphs (c)(2) and (c)(3) of this section, the Segregation Review Official will review the status of inmates housed in administrative detention. The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week and shall hold a hearing and review these cases formally at least every 30 days. The inmate appears before the SRO at the hearing unless the inmate waives the right to appear. A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing. Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days. The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates. Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals should detention continue for this extended period. Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection (see § 541.23), or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns. An inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO. Provided institutional security is not compromised, the inmate shall receive at each formal review a written copy of the SRO's decision and the basis for this finding. The SRO shall release an inmate from administrative detention when reasons for placement cease to exist.

28 C.F.R. § 541.22(c)(1). Tellier maintains that he never received an Administrative Detention Order or any of the periodic hearings required by Section 541.22(c).

Tellier's complaint states that he learned of the required hearings specified in Section 541.22 sometime in 1993, and he asked Defendant Gibson why he had not received such a hearing. According to Tellier, Gibson responded that hearings regarding Tellier's status in the SHU had been conducted informally and outside Tellier's presence.

Tellier alleges that sometime after this conversation, defendants slipped two "Special Housing Review Forms" under his cell door. Tellier claims that these forms falsely documented hearings in March and April of 1993 before the SRO concerning his confinement in the SHU.

Tellier further contends that on May 4, 1993, defendants brought him before the SRO. While he was in the office, the SRO made a brief telephone call and then marked "Continue in Special Housing" on his form. The SRO never told him why he was in SHU and denied him the opportunity to present evidence or be heard. Tellier alleges that this "procedure" occurred several times over the following months.

He also alleges that at no time was there a "psychiatric or psychological assessment" conducted by defendants as required in Section 541.22(c).

Tellier's complaint also contains allegations that he informed each defendant personally of what he considered to be ongoing violations of his statutory rights under Section 541.22 and his constitutional rights under the Due Process Clause. Tellier maintains that each of these defendants personally refused to provide hearings and ignored his due process rights.

On November 7, 1994, defendants filed an answer to Tellier's complaint. Defendants' answer denied the allegations made in Tellier's complaint, and it asserted numerous defenses, including failure to state a claim, lack of personal involvement by the defendants, and qualified immunity. On July 12, 1995, defendants filed a motion to dismiss or for summary judgment pursuant to Rules 12(b)(1), 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Along with this motion, defendants submitted affidavits attesting to their efforts to comply with Section 541.22 and further stating their beliefs that their conduct did not violate any clearly established constitutional right. Defendants' motion was referred to Magistrate Judge Leonard Bernikow for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On August 22, 1996, Magistrate Judge Bernikow issued his Report and Recommendation. Magistrate Judge Bernikow construed Tellier's complaint as one under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), based on violations of 28 C.F.R. § 541.22 and his procedural due process rights under the

Due Process Clause of the Fifth Amendment.[2] Magistrate Judge Bernikow concluded that defendants' motion for summary judgment and motion to dismiss should be denied, except with regard to Sharon Fields, who Magistrate Judge Bernikow found was not personally implicated by Tellier's complaint. Magistrate Judge Bernikow based this recommendation on his conclusion that: (1) Section 541.22 creates a protectable liberty interest under the Supreme Court's decisions in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); (2) defendants had not submitted any evidence that Section 541.22's requirements were met, and there was an issue of fact as to whether some of Tellier's SHU review forms had been falsified; and (3) defendants had not adequately established that they were entitled to qualified immunity.

Tellier stated in a September 4, 1996, letter to the court that he had no objections to the Magistrate Judge's Report and Recommendation and by order dated October 29, 1996, Judge Wood granted summary judgment with respect to Sharon Fields. In this same order, Judge Wood also granted Tellier's motion for leave to amend his complaint and therefore dismissed defendants' motion for summary judgment as moot. On November 4, 1996, Tellier wrote to the court requesting that he be allowed to withdraw his request for leave to file a proposed amended complaint and that the Magistrate Judge's original Report and Recommendation be reinstated. The district court granted this motion and defendants submitted their objections

---

**2.** Tellier's original complaint was filed using a form designated "FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983." Because of Tellier's pro se status, Magistrate Judge Bernikow construed Tellier's complaint liberally as including alleged violations of constitutional and statutory law.

to the Magistrate Judge's Report and Recommendation on December 4, 1996.

Defendants raised four primary objections to the Magistrate Judge's Report and Recommendation: (1) the Magistrate Judge improperly relied on state law cases in determining whether Section 541.22 created a protectable liberty interest; (2) the Supreme Court's decision in *Sandin* required that defendants' motion to dismiss be granted because the confinement in SHU was not atypical and significant; (3) Tellier received all the process he was due; and (4) the Magistrate Judge improperly rejected defendants' qualified immunity defense because Tellier failed to allege a violation of a clearly established constitutional right. By Opinion and Order filed February 18, 1998, Judge Wood adopted the Magistrate Judge's Report and Recommendation and denied defendants' motion for summary judgment. *See Tellier v. Scott,* 49 F.Supp.2d 607 (S.D.N.Y.1998).

In ruling on defendants' objections, the district court determined that this Court had "not expressly ruled on whether § 541.22 gives rise to a liberty interest on the part of federal prisoners." *Id.* at 610. The court then noted that this Court has repeatedly held that "state prisoners have a liberty interest in remaining free from administrative confinement where prison regulations 'specify certain conditions that must be met to permit a prisoner's placement' in such confinement." *Id.* (citing *Soto v. Walker,* 44 F.3d 169, 172 (2d Cir. 1995); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Russell v. Coughlin,* 910 F.2d 75,77 (2d Cir.1990); *Gittens v. Le-Fevre,* 891 F.2d 38, 40 (2d Cir.1989)). Although noting that other courts had ruled that Section 541.22 does not create a liberty interest, *see id.* (citing cases), the district court ruled that these decisions were inapposite because they relied on reasoning that was at odds with the Supreme

Court's precedent and because they all involved relatively short periods of confinement. *See id.* at 610–11. The district court therefore concluded that defendants had "not provided adequate grounds for holding as a matter of law that § [541.22] does not create a protected liberty interest in remaining free from administrative confinement." *Id.* at 611.

The district court also rejected the defendants' challenge under *Sandin.* After finding that Tellier had alleged a protectable liberty interest, the court noted that *Sandin's* "atypical and significant hardship" analysis involved a factual inquiry that could not be resolved on a motion to dismiss or a motion for summary judgment. *Id* at 612.

Finally, the district court rejected defendants' qualified immunity defense. The district court reiterated its conclusion that in this Circuit it was clearly established at the time the events in question occurred that "regulations like § 541.22 create[ ] a liberty interest in remaining free of administrative segregation." *Id.* at 614. The court also adopted the reasoning of the Magistrate Judge, who found that there were unresolved material facts regarding whether defendants had complied with federal regulations and had afforded Tellier due process in placing and maintaining him in SHU. *See id.* Specifically, the court concluded that at the present stage of the litigation there were issues of fact as to the circumstances surrounding defendants' actions that precluded a legal determination of whether their actions were reasonable. *See id.* at 615.

On appeal, defendants again argue that Tellier has failed to state a claim under Section 541.22 or the Due Process Clause that would afford him recovery. Defendants also contend that regardless of whether Tellier has stated a claim, they are protected by qualified immunity since

an objectively reasonable officer acting at the time of the events in question could not have known that he or she was violating a plaintiff's clearly established rights. We address both of these arguments in turn.

## II. DISCUSSION

### A. *Jurisdiction*

■ As an initial matter, both parties raise arguments concerning the nature and extent of our jurisdiction in this case. As a general rule, a district court's order denying a party's motion for summary judgment is an interlocutory order, and, as such, is not immediately appealable. *See Natale v. Town of Ridgefield*, 927 F.2d 101, 104 (2d Cir.1991) (citing 28 U.S.C. § 1291). There is an exception to this rule, however, where a defendant's motion for summary judgment asserts a defense of qualified immunity. *See id.* (citing *Bolden v. Alston*, 810 F.2d 353, 356 (2d Cir. 1987)). This exception is only applicable if the "district court's denial of a claim of qualified immunity ... turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *see also Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996); *Genas v. New York Dep't of Correctional Servs.*, 75 F.3d 825, 830 (2d Cir.1996).

■ As we noted in *Salim*, the Supreme Court's jurisprudence in the wake of *Mitchell* has put further gloss on what issues constitute an "issue of law." *Salim*, 93 F.3d at 89. The Supreme Court's decisions in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), establish that the issue of whether the plaintiff has offered sufficient evidence to "support a finding that particular conduct occurred" is "not immediately appealable." *Behrens*, 516 U.S. at 313, 116 S.Ct. 834. However,

the defendant's assertion that he or she is entitled to qualified immunity on the basis of stipulated facts, or on the facts as stated by the plaintiff, presents a purely legal question that we have jurisdiction to review. *See Salim*, 93 F.3d at 89; *see also Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir.1996). In other words, "What we may not do, after *Johnson* and *Behrens*, is entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense." *Salim*, 93 F.3d at 91.

■ Here, defendants maintain that we have jurisdiction to review the denial of their motion for summary judgment because they raise a strictly legal claim. Specifically, defendants assert that they are entitled to qualified immunity because, at the time of the alleged violation, their actions as alleged by plaintiff violated no clearly established law. Defendants also insist that we must concomitantly address whether plaintiff has asserted a violation of a constitutional right.

We agree with defendants that we have jurisdiction to review both of these issues, as questions of law, despite the interlocutory nature of the proceedings. In *Siegert v. Gilley*, 895 F.2d 797 (D.C.Cir.1990) the Supreme Court granted certiorari, 498 U.S. 918, 111 S.Ct. 292, 112 L.Ed.2d 246 (1990), "in order to clarify the analytical structure under which a claim of qualified immunity should be addressed." It held that the indispensable threshold inquiry is "whether the plaintiff asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). According to *Siegert*, that decision is a "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff

is 'clearly established.'" *Id.* at 232, 111 S.Ct. 1789. The Supreme Court recognized that the two inquiries combined are determinative of whether qualified immunity exists.

■ In subsequent cases in which the Court found that qualified immunity did exist because the right was not clearly established, the Court consistently addressed the constitutional issue first. *See Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The Supreme Court explained that even if qualified immunity does exist, there must still be some decision about the state of constitutional law. *See Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Hence, *a fortiori,* where a court concludes that qualified immunity does not exist because a right was clearly established, at the time of the alleged acts, it is necessary for the Court to first articulate that right.

Although we recently relied solely on the lack of clearly established law to dismiss an action on qualified immunity grounds, we did not do so without scrupulously examining the circumstances of the case, in light of the Supreme Court's guidance. *See Horne v. Coughlin,* 155 F.3d 26 (2d Cir.1998), *adhered to on reh'g,* 178 F.3d 603, *as amended,* 191 F.3d 244, 248–49, *cert. denied,* 528 U.S. 1052, 120 S.Ct. 594, 145 L.Ed.2d 493 (1999). We found that in some situations where the lack of clearly established law would supply a sufficient ground for decision, avoiding the constitutional question was the better approach. *Horne,* 191 F.3d at 247–49.

■ Moreover, we noted that where the challenged conduct is particularly egre-

gious, or where it is likely that the constitutional question would escape review over a lengthy period, or where deciding the constitutional issue plays a role in supporting the action taken by the court, avoidance would contravene the Supreme Court's guidance in *Siegert* and its progeny. *Horne,* 191 F.3d at 246–47. *Horne* supports the need to address the constitutional question when a court finds that qualified immunity does not exist because the right asserted is clearly established. In that instance, (and in this case) the constitutional inquiry is inextricably bound to the resolution of whether qualified immunity exists. We also note that the challenged conduct here is particularly egregious. Accordingly, we find that it is proper for us to reach the merits of the constitutional question in this case.

### B. *Standard of Review*

■ This Court reviews de novo a district court's decision denying a government official's motion to dismiss for failure to state a claim and motion for summary judgment based on qualified immunity, " 'taking as true the factual allegations of the non-moving party, and drawing all inferences from the underlying facts in appellee's favor.' " *Natale v. Town of Ridgefield,* 927 F.2d 101, 104 (2d Cir.1991) (quoting *P.C. v. McLaughlin,* 913 F.2d 1033, 1040 (2d Cir.1990)).

### C. *Defendants' Claims of Qualified Immunity*

1. *Whether Plaintiff Alleges Violation of a Constitutionally Protected Right—Does Section 541.22 Create a Protectable Liberty Interest?*

■ In order to determine whether Tellier has stated a claim for procedural due process violations,[3] we must deter-

---

**3.** We have recognized that the Supreme Court

in *Sandin* and *Vitek v. Jones,* 445 U.S. 480,

mine: " '(1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.' " *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997) (quoting *Bedoya*, 91 F.3d at 351–52). As we have recognized previously, after the Supreme Court's decision in *Sandin*, our determination of "whether the plaintiff had a protected liberty interest in not being confined" also requires a two-part analysis. *Id.* (citing *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam)).[4] "As a result of *Sandin*, a prisoner has a liberty interest only if the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation." *Id.* at 52.

■ First, we examine whether the alleged deprivation was atypical and significant. We have previously held that whether a plaintiff's confinement satisfies the "atypical and significant hardship" requirement involves factual determinations. *See Miller*, 111 F.3d at 8–9. Here, Tellier has alleged a confinement of 514 days under conditions that differ markedly from those in the general population, and we cannot conclude as a matter of law that this confinement was not "atypical and significant." *See Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998) (vacating and remanding grant of summary judgment

where district court failed to consider length and conditions of segregated confinement). Thus, defendants cannot support their motion to dismiss on this issue.

■ Second, we must examine whether the state has created a liberty interest by statute or regulation. *See Sealey*, 116 F.3d at 51. In conducting this examination, we have held that *Sandin* "abandoned the framework established in *Hewitt* for analyzing whether a prisoner who is subjected to a disciplinary confinement had been deprived of a liberty interest." *Frazier*, 81 F.3d at 317 (citing *Sandin*, 515 U.S. at 483, 115 S.Ct. 2293). *Sandin*, however, rejected only the portion of *Hewitt* stating that "the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, *forces* a conclusion that the State has created a liberty interest." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (quoting *Hewitt*, 459 U.S. at 472, 103 S.Ct. 864) (emphasis added). Thus, we have construed *Sandin* to mean that a state "may *under certain circumstances* create liberty interests which are protected by the Due Process Clause," *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293 (emphasis added). Furthermore, we have recognized that nothing in the *Sandin* decision indicates that the Court intended to "create a *per se* blanket

493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), stated that there might also be claims for violations of substantive liberty interests that "arise[ ] from 'the Due Process Clause of its own force.' " *Welch v. Bartlett*, 196 F.3d 389, 392 n. 1 (2d Cir.1999) (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293). Since we do not read Tellier's brief as raising a substantive due process claim, we do not address whether Tellier has stated such a claim.

4. Because *Sandin* was decided after the events in question occurred, but prior to Tellier's filing of this claim, *Sandin's* application

to the present case is somewhat complicated. *Sandin* applies retroactively to the question of whether Tellier has alleged a liberty interest. *See Arce v. Walker*, 139 F.3d 329, 334 (2d Cir.1998) (citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)). We agree with the district court, however, that *Sandin* is not relevant to the qualified immunity analysis, which looks to the state of the law at the time the events in question allegedly occurred. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

rule that disciplinary confinement may never implicate a liberty interest." *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997).

We note that there is some debate among courts as to whether Section 541.22 creates a protectable liberty interest. *Compare, e.g., Crowder v. True,* 74 F.3d 812, 815 (7th Cir.1996) (per curiam) ("We ... hold that § 541.22 does not create a constitutionally protected liberty interest"), *Moore v. Ham,* No. 92–3305, 1993 WL 5874, at *1 (10th Cir. Jan.12, 1993) (unpublished decision) ("[Plaintiff's] assertion that 28 C.F.R. § 541.22 grants him a liberty interest in remaining in general prison population is not supported by the law of this jurisdiction."), *and Awalt v. Whalen,* 809 F.Supp. 414, 416 (E.D.Va. 1992) ("[Sections 541.22 and 541.23] do not create a liberty interest in release from detention which a hearing would protect."), *with, e.g., Muhammad v. Carlson,* 845 F.2d 175, 177–78 (8th Cir.1988) (stating in dicta, prior to *Sandin,* that Section 541.22–23 is "couched in 'unmistakably mandatory' language," and intimating that it would therefore give rise to a protectable liberty interest), *and Maclean v. Secor,* 876 F.Supp. 695, 701–02 (E.D.Pa.1995) ("[Sections 541.22 and 541.15] are sufficient to confer a liberty interest here...").

■ After conducting the *Hewitt / Sandin* analysis with respect to Section 541.22, we conclude that Section 541.22 creates a liberty interest. Under *Hewitt,* courts considering the existence of an alleged liberty interest must ascertain whether "statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999) (quoting *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. 864). We find that Section 541.22 contains such mandatory language and therefore creates a pro-

tectable liberty interest in not being confined.

■ In reviewing the text of Section 541.22, we find its text replete with words such as "shall," "unless," and "only." Although the mere use of these words is neither dispositive nor talismanic, it supports plaintiff's argument that the Bureau of Prisons intended to guide the decision making power of prison officials by *requiring* that certain prerequisites be met and certain procedures be followed whenever a prisoner was subject to segregated housing. This conclusion is most strongly supported by the last sentence of Section 541.22(c), which instructs that "[t]he SRO *shall release* an inmate from administrative detention when reasons for placement cease to exist." 28 C.F.R. § 541.22(c)(1) (emphasis added).

Defendants argue that Section 541.22 does not create a protectable liberty interest because the procedural protections outlined in the Section are not designed to "determine whether the prisoner meets any of the standards for placement in administrative detention as set forth in Section 541.22(a)(1)-(6)." Appellants' Reply Br. at 8. Rather, defendants argue that the procedure is "designed to monitor the condition and adjustment of the prisoner in administrative detention." *Id.*

Defendants contend that the mandatory language used in Section 541.22 might indeed require certain hearings and reviews, but that these hearings and reviews "concern the mental and physical condition of the inmate, not the decision to place or keep him in detention." Appellants' Reply Br. at 9. They argue that these hearings are such that they cannot reach a result that requires a prisoner be returned to the population, and therefore that plaintiff has no liberty interest in receiving such hearings.

In fine, Defendants argue that the Warden's decision regarding a prisoner's placement in SHU is discretionary. Defendants further argue that the discretion that the Warden has in electing to place a prisoner in administrative detention affords him or her the discretion to continue a prisoner's segregation. Appellants' Br. at 20. As such, under the Court's decisions in *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the prisoner would have no liberty interest in the hearings and reviews described in Section 541.22 because the Warden always has the discretion to have a prisoner housed in a segregated unit. *Cf. Olim*, 461 U.S. at 249, 103 S.Ct. 1741 ("If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected liberty interest.") (citation omitted) (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 466–67, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)).

We agree with defendants that the Warden's initial decision to place a prisoner in SHU is, in applicable cases, an entirely discretionary decision. Because the regulation at issue clearly indicates that the Warden's decision to place a prisoner in SHU is discretionary as long as certain predicates are satisfied, *see* 28 C.F.R. § 541.22(a)(1)-(6), a prisoner has no protected liberty interest that is violated when

the Warden removes him or her from the general population.[5]

We cannot, however, take the leap urged upon us by defendants. Whatever discretion the Warden might have in placing a prisoner in SHU, the discretion surrounding this decision is not boundless and continuing. While subsection (a) of Section 541.22 may be read to afford the Warden discretion in *placing* a prisoner in SHU, subsection (c) clearly provides for certain hearings and reviews that constrain the Warden's discretion in *maintaining* a prisoner in SHU and further commands that "[t]he SRO shall release an inmate from administrative detention when reasons for placement cease to exist." 28 C.F.R. § 541.22(c)(1).

We also reject defendants' argument that the procedures in Section 541.22 are not "linked" to the duration of a prisoner's term in SHU, or defendants' related contention that Section 541.22 does not contain mandatory language related to placement or continued confinement. *See* Appellants' Br. at 23. Section 541.22 explicitly states that "[a]dministrative detention is to be used only for short periods of time ... or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns." 28 C.F.R. § 541.22(c)(1). While it is undisputed that plaintiff's placement in SHU was occasioned by security concerns after he allegedly attempted escape on two occasions, and thus that his case may be one of those in which longer periods in SHU is permitted, the next sentence of the regulation is designed to limit even longer

---

5. As we read the cases cited by defendants, courts are in uniform agreement on this issue. *See, e.g., Hagan v. Tirado,* 896 F.Supp. 990, 996 (C.D.Cal.1995) (placement in SHU is within warden's discretion); *Franklin v. True,* No. 92 C 604, 1994 WL 559228, at * 3 (N.D.Ill. Oct.7, 1994) (same); *see also, e.g., Olim,* 461 U.S. at 249, 103 S.Ct. 1741 (holding that no cause of action under due process clause exists when "regulations place no substantive limitations on official discretion"). This may not hold true, however, if the warden does not comply with the substantive predicates set out in Section 541.22(a). *See, e.g., Von Kahl v. Brennan,* 855 F.Supp. 1413, 1417 (M.D.Pa.1994).

stays. The regulation provides that "[a]n inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO." 28 C.F.R. § 541.22(c)(1).

■ In context, we read this directive, alongside Section 541.22's required personal interviews, written reports, and psychiatric or psychological assessments, to mean that Section 541.22's procedures are designed to ensure that a prisoner is kept in SHU for no longer than is necessary. We therefore cannot accept defendants' reading of the regulation as contemplating simply the "monitor[ing]" of an inmate; such monitoring would amount to a needless exercise were it not designed to provide officials with information to evaluate whether continued segregation was warranted. Section 541.22(c) mandates that the SRO release a prisoner from segregated housing when the reasons for confinement cease to exist; we fail to see how this directive is infused with even a modicum of discretion.

Defendants also argue that Tellier is mistaken in relying on certain provisions in Section 541.22 as "preconditions for confinement," Appellants' Br. at 20 (citing Appellee's Br. at 22), because such a focus is mistakenly premised on *Hewitt's* approach to analyzing liberty interests later abandoned by *Sandin*. We disagree with defendants' articulation of the effect of *Sandin* on cases involving prisoners and prison regulations. Defendants argue that *Sandin* rejected the portion of *Hewitt* that emphasized examination of regulations for "mandatory language and substantive predicates," *Sandin*, 515 U.S. at 480–81, 115 S.Ct. 2293, in order to determine whether a regulation created a protected liberty interest. As we have stated in previous cases, we do not read *Sandin* to have so radically undone the tenets of *Hewitt*. *See Sealey*, 116 F.3d at 52 (noting that even after *Sandin*, courts must determine whether the state has created a liberty interest by statute or regulation). While the Supreme Court noted that *Sandin* represented an abandonment of *Hewitt's* methodology, it also carefully noted that it was not overruling *Hewitt* and declared that the Court was returning to the principles set out in *Wolff* and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). *See Sandin*, 515 U.S. at 484 n. 5, 115 S.Ct. 2293.

■ In returning to the approach used in *Wolff* and *Meachum*, the Supreme Court shifted the emphasis of the inquiry from the strict language of the statute to an analysis of the right safeguarded by the statute. Read together, *Sandin*, *Wolff*, and *Meachum*, all support the proposition that a statute or regulation which involves "state-created right[s]," *Wolff*, 418 U.S. at 557, 94 S.Ct. 2963, creates a protectable liberty interest when an official's failure to adhere to the statute results in an "atypical, significant deprivation," *Sandin*, 515 U.S. at 486, 115 S.Ct. 2293, of "real substance," *Wolff*, 418 U.S. at 557, 94 S.Ct. 2963, and not simply "ephemeral and insubstantial" violations. *Meachum*, 427 U.S. at 228, 96 S.Ct. 2532.

In this case, we find that Section 541.22 contains mandatory language that gives rise to a "state-created right," and since we agree with the district court that *Sandin* requires a factual determination regarding the nature of Tellier's confinement, defendants' motion to dismiss was properly denied at this point in the litigation. *See Miller*, 111 F.3d at 9 (stating that "district courts must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest.").

*2. Whether the Right Allegedly Violated Was Clearly Established*

■ Defendants also contend that regardless of whether Section 541.22 creates

a liberty interest, they are entitled to qualified immunity. Under the so-called "discretionary function" immunity, officials are immune from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even in cases where such rights are clearly established, "qualified immunity ... protects a government official 'if it was objectively reasonable for [the official] to believe that his acts did not violate those rights.'" *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)).

■■■ Because qualified immunity is an affirmative defense, however, "the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir.1997) (citing *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727). Furthermore, qualified immunity does not act as a shield for individuals who "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Catanzaro v. Weiden*, 140 F.3d 91, 96 (2d Cir.1998). We therefore must examine whether defendants have met their required burden of demonstrating the nonexistence of a clearly established right or that it was reasonable, as a matter of law, for defendants to take the actions that plaintiff alleges they took.

■■■ To determine whether Tellier's liberty interest was clearly established, we must look to the state of the law as it existed between 1992 and 1994, when the events in question allegedly occurred. *See Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. For a right to be "clearly established" for purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Russell*, 910 F.2d at 78 (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989)); *see also Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. Furthermore, a law is considered "clearly established" so long as this "circuit's decisions 'clearly foreshadow' a particular ruling on the issue." *Varrone*, 123 F.3d at 79 (quoting *Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir.1988)). Thus, the absence of a decision by this Court or the Supreme Court directly addressing the right at issue "will not preclude a finding that the law was clearly established," *Shabazz*, 852 F.2d at 701, at the time of the alleged violation.

■■■ Applying these principles to the regulation at issue here, Section 541.22, we conclude that Tellier's procedural due process rights in defendants' adhering to the regulation were clearly established. At that time, this Court had already clearly stated that a prisoner's federal due process rights were implicated by even a ten-day confinement period. *See Russell*, 910 F.2d at 79 ("[D]efendants could not have reasonably believed that releasing Russell on his tenth day of confinement without providing any notice or opportunity to be heard complied with the requirements of federal due process."). Additionally, our decision in *Wright v. Smith* reaffirms that as early as 1983, "prison officials [could not] doubt that they have acted unconstitutionally where confinement ... continued, without a hearing, for 67 days." 21 F.3d 496, 500 (2d Cir.1994) (citing cases).

While we recognize that this line of cases deals with prisoners in state facilities, these decisions are grounded in federal due process rights. These cases readily establish that the use of terms such as "must" and "shall" in prison regulations give rise to a federally protected liberty interest. *See, e.g., Russell*, 910 F.2d at 79.

Even though this Court had not ruled specifically that Section 541.22 created a protectable liberty interest prior to the alleged events in question, such a decision was "clearly foreshadowed," *Varrone*, 123 F.3d at 79, by our prior precedents. *See also United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'") (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034).

### 3. *Whether Defendants' Actions Were Objectively Reasonable*

 Defendants also argue that they are shielded by qualified immunity because at the time of their alleged actions, no objectively reasonable actor could have known that he or she was violating a prisoner's constitutional rights by not adhering to Section 541.22. According to defendants, the only courts to have considered whether Section 541.22 creates a liberty interest have concluded that it did not do so. Defendants also cite decisions subsequent to the alleged occurrence in this case as support for their argument that no objectively reasonable official could have known that his or her actions were unlawful.

We reject these arguments. First, we cannot accept the notion that qualified immunity confers protections on officials in cases where the officers may have "knowingly violate[d] the law." *Malley*, 475 U.S. at 341, 106 S.Ct. 1092. Assuming that Tellier's allegations are true, as we must at this stage of this litigation, defendants confined him to SHU for a period of 514 days without affording him any of the procedural protections outlined in Section 541.22. Had defendants confined Tellier for a brief period without a required hearing, we might be inclined to agree that no objectively reasonable officer could have known that such a minor infraction constituted a violation of Tellier's constitutional rights. Indeed, the cases that defendants maintain support their arguments for qualified immunity all concern relatively brief periods of confinement. *See, e.g., Crowder*, 74 F.3d at 814 (three months); *Awalt v. Whalen*, 809 F.Supp. 414 (E.D.Va.1992) (91 days); *Rowe v. Hurley*, No. 94–2343, 1995 WL 375861, at *1 (7th Cir. June 7, 1995) (unpublished decision) (ten months); *Franklin*, 1994 WL 559228, at *1 (69 days and 183 days); *Moore*, 1993 WL 5874, at *1 (three days); *Eggleton v. Gluch*, No. 89–1927, 1990 WL 155316, at *2 (6th Cir. Oct.15, 1990) (six months).

In this case, however, whatever good faith belief that the officers might have held regarding a brief deprivation of Tellier's rights under Section 541.22, it is simply unreasonable for any official to believe that a continuing violation of 514 days without a required hearing was permitted by Section 541.22. As we stated in an earlier case concerning a similar New York State statute:

> With regard to the officials' claim to qualified immunity for impairment of the liberty interest in the pending case, we note that the New York regulation itself gave the officials clear notice that confinement could not be continued beyond 14 days without a hearing. Morever, we had said as early as 1977 that prison authorities could confine an inmate for his own safety "as long as a hearing follows as soon as is practicable." Whether or not that requirement would suffice to overcome a qualified immunity defense as to a modest period of confinement without a hearing, it surely leaves prison officials in no doubt that they have acted unconstitutionally where con-

finement has continued, without a hearing, for 67 days.

*Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (internal quotations and citations omitted). The principle established in *Wright*-that a period of 67 days in SHU without hearings when such hearings were required by regulation at 14 days violates due process-surely applies *a fortiori* in this case, where Tellier allegedly was confined for 514 days without hearings when such hearings are required at seven days and again every 30 days.

While qualified immunity properly protects officials who operate in areas of legal uncertainty and who act with a good faith belief that their behavior comports with constitutional and statutory directives, we simply cannot accept that it would ever confer protections on egregious violations of a federal regulation. This Court will not confer immunity on any official who glaringly disregards the very regulations that he or she is entrusted to discharge dutifully and in good faith.

We also reject defendants' contentions that decisions from other courts in which the courts found that Section 541.22 did not create a liberty interest somehow confer immunity on their actions in this case. First, many of the decisions cited by defendants are unpublished decisions by distant circuits. It stretches the bounds of credulity for prison officials to claim that they could not have known their acts violated a clearly established right because they were aware of decisions from courts in Kansas, Kentucky and Oklahoma that are only available on electronic databases.

Defendants' citation of these cases does, however, present a more difficult point that requires us to examine these cases with a closer lens. If, after all, a court of presumably reasonable jurists reads a regulation as not establishing a protectable liberty interest, why should prison officials, who are less likely to be trained in legal analysis, be held liable for failing to reach the opposite conclusion. A close examination of these decisions, however, reveals that they are inapposite.[6]

For example, the Tenth Circuit's decision in *Moore,* 1993 WL 5874, at *1, cited by defendants, offers no support for their arguments. In *Moore,* the plaintiff was held in SHU for a period of "no more than three days," *id.,* and was provided with a record review by the SRO on the third day as required by Section 541.22. *See id.* The thrust of plaintiff's claim in *Moore* was not so much that defendants violated his procedural rights under Section 541.22, but rather was that "defendants fabricated the rationale given for detention." *Id.* As the *Moore* court noted, "Section 541.22 would not have entitled Moore to a hearing until he had spent seven continuous days in detention," *id.,* and since Moore had not alleged that he had spent such a period, the court affirmed the district court's order of dismissal. This case has little or no bearing on the analysis in the case before us because it did not consider the question at issue here, namely, whether not providing plaintiff with a hearing on the *seventh* day of his confinement, and during the 507 days thereafter, violated his rights under Section 541.22.

The Sixth Circuit's decision in *Eggleton,* 1990 WL 155316, at *1, is similarly at odds with the law of this Circuit. *See Wright,* 21 F.3d at 500. In fact, *Eggleton,* an unpublished and nonbinding decision, is

---

6. We also note that the Seventh Circuit's decision in *Crowder* provides no support for the defendants' position. *Crowder* was decided in 1996 after all of the events in this case had already transpired; it therefore could not contribute to defendants' beliefs as to the reasonableness of their actions.

also squarely at odds with later Sixth Circuit precedent. *See Mackey v. Dyke,* 29 F.3d 1086, 1094 (6th Cir.1994) (reversing and remanding district court's grant of qualified immunity where "[a] district court within this circuit concluded in 1981 that prison officials denied an inmate's right to due process by failing either to return him promptly to the general population or to follow the same procedures for placing him there originally if they decided not to release him"). We hold that a three-judge panel's unpublished opinion that was later disapproved simply does not establish reasonableness as a matter of law. *Cf. Tenenbaum v. Williams,* 193 F.3d 581, 596 (2d Cir.1999): "The district court, in a thoughtful and thorough opinion ... held that the individual defendants' actions ... complied with procedural due-process requirements. *While such a conclusion would not entirely preclude us from finding that the individual defendants' actions violated plaintiffs' 'clearly established right,'* the district court's determination ... that no such right existed helps persuade us that [at the relevant time] the right was not 'clearly established.'" (Emphasis added.)

Thus, defendants have failed to point to either a decision of this Court or the Supreme Court, or even another circuit court, that would support a reasonable conclusion that their actions were not in contravention of Tellier's constitutional rights. We therefore conclude that defendants have not met their burden of establishing their qualified immunity defense as a matter of law. The district court correctly denied defendants' motion for summary judgment on qualified immunity grounds.

## III. CONCLUSION

For the foregoing reasons, we conclude that plaintiff has alleged a deprivation of a constitutionally protected right and the defendants are not entitled to qualified immunity at this time. Accordingly, the decision of the district court is hereby AFFIRMED.