DAVID N. HURD, United States District Judge
I. INTRODUCTION
This is a pro se civil rights complaint filed by plaintiff Lorcen Burroughs ("Burroughs" or "plaintiff") pursuant to 42 U.S.C. § 1983 (" Section 1983") that asserts claims arising out of his confinement in the *263 custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at Great Meadow Correctional Facility ("Great Meadow C.F."), has not paid the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 12 ("IFP Application").[1]
II. IFP APPLICATION
On June 28, 2018, Burroughs filed an IFP Application that was not certified by an appropriate official at plaintiff's facility. Dkt. No. 9. Additionally, plaintiff did not provide copies of his inmate account statements. Accordingly, that application (Dkt. No. 9) is incomplete and denied. However, on June 29, 2018, plaintiff provided a second IFP Application. Dkt. No. 12.
" 28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein , No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). Notably, Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g).
After reviewing the information that Burroughs provided in this second application, it is found that he meets the financial criteria for commencing this action in forma pauperis. And based upon a review of Burroughs's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that he has accumulated three strikes for purposes of 28 U.S.C. § 1915(g). As a result, plaintiff's second IFP application (Dkt. No. 12) is granted.
III. INITIAL SCREENING
Having found that Burroughs meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from an officer or employee of a governmental entity, the sufficiency of the allegations set forth in the complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A.
Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]
Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks *264 monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b) ; see also Carr v. Dvorin , 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).
Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8"is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Hudson v. Artuz , No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank , No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted) ).
A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). Rule 8"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown , 335 F. App'x 102, 104 (2d Cir. 2009).
IV. SUMMARY OF THE COMPLAINT
The incidents that form the foundation for the complaint occurred while Burroughs was variously confined at Clinton Correctional Facility ("Clinton C.F."), Upstate Correctional Facility ("Upstate C.F."), and Great Meadow C.F. See Compl., generally .
In a thirty-four page pleading with more than forty pages of exhibits, Burroughs alleges that he was the victim of various constitutional violations following the dramatic and very public escape of David Sweat ("Sweat") and Richard Matt ("Matt") from Clinton C.F. in June 2015.[3] See id. Plaintiff names thirty-three defendants. See id. The following facts are set forth as alleged by plaintiff in his complaint.
*265 A. Clinton C.F.
In June 2014, Burroughs was transferred to Clinton C.F. Dkt. No. 1-1 at 2. About a month later, plaintiff began working in Tailor Shop 8 at Clinton C.F., where Sweat was also employed. Compl. at 7.
On or about June 6, 2015, during the morning count, corrections officers discovered that Matt and Sweat were not in their cells. Compl. at 9. Defendant Superintendent Steven Racette ("Racette") notified defendants Commissioner Anthony Annucci ("Annucci") and Governor Andrew Cuomo ("Cuomo") and placed the prison on "lockdown". Id. The power to plaintiff's cell was turned off and he did not receive a meal that day. Id. Plaintiff, other inmates, and staff members were questioned about the plan to escape. Id.
Burroughs denied having any information regarding the whereabouts of Matt or Sweat. Compl. at 9. After extensive questioning, however, defendants Joyce Mitchell ("Mitchell") and Gene Palmer ("Palmer") admitted their involvement in the escape and implicated other prison officials. Compl. at 9. Neither Mitchell nor Palmer identified Burroughs as an accomplice. Id. at 10.
On June 17, 2015, while Burroughs was asleep, defendants Sergeant Woods ("Woods"), C.O. John/Jane Doe # 5 ("Doe # 5") and C.O. John Doe # 6 ("Doe # 6") entered plaintiff's cell. Compl. at 10. Doe # 5 stood over plaintiff and questioned him about the escape. Id. When plaintiff denied having any information, Doe # 5 ordered plaintiff out of his cell and directed him to place his hands on the gate for a pat frisk. Id. Doe # 5 frisked plaintiff and handcuffed him "tightly," which caused cuts to his wrist. Id. Doe # 5 also "slammed" plaintiff's face into the metal gate and told plaintiff that he had the "green light" from Cuomo to "kill you if need be." Compl. at 10. Plaintiff's chin was cut and bleeding, he lost consciousness, and suffered a concussion. Id. Woods and Doe # 6 were present during the incident but did nothing. Id.
Burroughs regained consciousness and was "dragged" to the facility hospital. Compl. at 11. When he arrived, Doe # 5, Doe # 6, and Woods directed plaintiff into a small room. Id. Doe # 5 told plaintiff "to shut up and not say nothing" and threatened to kill him. Id. Doe # 5 performed a strip frisk and gave plaintiff "greens and boots." Id.
Doe # 5, Doe # 6, and Woods accompanied Burroughs into an examination room, where he was evaluated by defendant Nurse Bob Fitzgerald ("Fitzgerald"). Compl. at 11. In the presence of the officers, Fitzgerald asked plaintiff how he sustained his injuries. Id. Due to defendants' threatening behavior, plaintiff fabricated a story-he became dizzy, lost consciousness, fell to his knees, and hit his chin on the cell bars. Dkt. No. 1-1 at 4. Fitzgerald noted that plaintiff suffered a "small superficial abrasion" and did not treat plaintiff for his injuries. Compl. at 11; Dkt. No. 1-1 at 4. Thereafter, C.O. Doe # 1 ("Doe # 1") entered the room and took pictures of plaintiff's jaw and wrist. Id.
After the examination, Doe # 5 and Doe # 6 restrained Burroughs and placed him in a small cage inside a black truck for a one-hour drive to Upstate C.F. Compl. at 12.
B. Upstate C.F. [4]
When Burroughs arrived at Upstate C.F., Nurse Jane Doe # 3 ("Doe # 3) conducted an interview and saw blood on plaintiff's shirt, neck, and pants. Compl. at *266 12. Doe # 3 asked plaintiff what happened to his jaw and wrists, but plaintiff could not speak. Id. Instead, plaintiff asked for a pen and wrote that Doe # 5 assaulted him without provocation. Id. Doe # 3 told plaintiff to request sick call and left the room. Id. However, Doe # 3 did not provide any medical treatment or document plaintiff's injuries. Compl. at 12.
Burroughs was escorted to an interview room and was questioned by defendants New York State Police Investigator John Doe # 4 ("Doe # 4") and an Investigator from the Office of Special Investigations John Doe # 7 ("Doe # 7"). Compl. at 13. Doe # 7 asked plaintiff about his injuries and plaintiff reported that he was assaulted and denied medical attention. Id. Doe # 7 promised plaintiff "work release" if he provided information regarding Matt and Sweat. Id. However, plaintiff continued to respond that he did not know anything about the plot to escape. Compl. at 13. Because plaintiff did not provide information, Doe # 7 told plaintiff that he would remain in the Special Housing Unit ("SHU"), without food or property. Id.
On June 17, 2015, Burroughs was transferred to the SHU without a misbehavior report or disciplinary hearing. Compl. at 13. Plaintiff was not provided with clothing, hygiene products, stamps, or commissary. Id. Plaintiff's cell did not have an operational toilet or running water, and jail staff placed a placard on his cell door indicating: "Clinton Inmate, Do Not Talk To Him." Id. After four days, a sergeant ordered corrections officers to turn on the water and toilet in plaintiff's cell. Id.
From June 18, 2015 until June 24, 2015, defendant Superintendent Donald G. Uhler ("Uhler") conducted rounds in the SHU. Compl. at 14. Burroughs told Uhler that he was assaulted and denied medical attention. Id. Plaintiff repeatedly asked for medical attention, supplies, clothing, commissary, mental health treatment, water, and religious material. Id.
On June 22, 2015, defendant Offender Rehabilitation Coordinator Tabb ("Tabb") interviewed Burroughs. Compl. at 14. Plaintiff told Tabb that he needed medical attention, supplies, personal property, and commissary. Id. Tabb told plaintiff that he could not help. Id.
On June 23, 2015, after six days without recreation, Burroughs received one hour of recreation. Compl. at 15. Plaintiff went to the "cage" and "fished" with another inmate.[5] Id. The inmate gave plaintiff envelopes, stamps, paper, and a pen. Id. Plaintiff wrote to his family. Id.
On June 24, 2015, Burroughs filed a grievance and claimed that he was transferred from Clinton C.F. without his property. Compl. at 15; Dkt. No. 1-1 at 6. The Inmate Grievance Resolution Committee ("IGRC") denied his grievance. Id. Plaintiff appealed, and on July 21, 2015, Uhler concurred with the IGRC decision. Dkt. No. 1-1 at 6.
On June 26, 2015, defendant Sergeant Shattuck ("Shattuck") escorted Burroughs to his property. Compl. at 15. Plaintiff noticed that several bags of his property were missing. Id. , Dkt. No. 1-1 at 24. Plaintiff asked for a copy of the 2064 Form[6] so that he could determine what was missing and identify the officer who packed his property. Id. Shattuck advised that no such form existed. Id. Plaintiff asked Shattuck for his religious items including *267 his Koran, prayer rug, and Kufi. Compl. at 15. Plaintiff also asked for his religious meal because he was fasting for Ramadan. Id. Shattuck denied plaintiff's requests. Id. Shattuck questioned plaintiff about Sweat and Matt and when plaintiff responded that he had no information, Shattuck escorted plaintiff back to his cell without his property or medical attention. Id. at 15-16.
C. Great Meadow C.F.
On June 30, 2015, Burroughs was transferred to Great Meadow C.F. Compl. at 16. After ten days, plaintiff received his property and noticed that some bags were missing and that other bags did not belong to him. Id. Defendant John Doe # 8 ("Doe # 8"), the officer responsible for packing cell property at Clinton C.F., failed to complete the proper DOCCS forms. Id. In addition, defendant John Doe # 2 ("Doe # 2), the property officer at Great Meadow C.F., failed to follow directives and compelled plaintiff to sign a form for the property. Id.
On July 6, 2015, Burroughs filed a grievance claiming that he was assaulted at Clinton C.F. because he could not provide information related to the whereabouts of Matt and Sweat. Dkt. No. 1-1 at 10.
On July 7, 2015, Burroughs filed a grievance and a claim for his missing and damaged property. Compl. at 16; Dkt. No. 1-1 at 8, 24-25.
On July 10, 2015, Burroughs filed another grievance related to his property. Dkt. No. 1-1 at 12. Plaintiff's grievances were later denied. Id. at 14.
In July 2015, Burroughs began to receive mail from his family and friends that was dated June 2015. Compl. at 17. Plaintiff's family was never apprised of his location or movements. Id.
On July 7, 2015, August 3, 2015, August 23, 2015, September 21, 2015, and October 8, 2015, defendants Lieutenant S. Winchell ("Winchell") and Corrections Officer E. Cucchi ("Cucchi") compelled Burroughs to submit to urine tests and fabricated false positive results for drug use. Compl. at 17; Dkt. No. 1-1 at 41.
In August 2015, defendant OSI Investigator Mr. Payton ("Payton") interviewed Burroughs. Compl. at 17. Plaintiff provided an account of what happened to him after the escape, but Payton did not document his complaints. Id. at 18.
In November 2015, Burroughs received a false misbehavior report from Cucchi.[7] Compl. at 18. As a result, plaintiff was placed in twenty-four hour keeplock for fourteen days. Compl. at 18. Defendant Deputy Superintendent of Programs Phil Melecio ("Melecio") conducted a disciplinary hearing after the fourteen day period. Id. Melecio told plaintiff that if he pleaded guilty, he would transfer plaintiff to Attica Correctional Facility ("Attica C.F."), which was closer to plaintiff's home. Id. As a result, plaintiff pleaded guilty and, one week later, was transferred to Attica C.F.[8] Id.
In December 2015, Defendants Corrections Officer/Claim Officer Edward Carpenter ("Carpenter") and Budget Analyst Eileen M. Nerf ("Nerf") denied Burroughs's property claim. Compl. at 18-19; Dkt. No. 1-1 at 26, 30.
Construing the complaint liberally, Burroughs asserts the following claims: (1)
*268 First Amendment claims related to plaintiff's freedom of speech and association; (2) Eighth Amendment conditions-of-confinement claims; (3) Eighth Amendment excessive force claims and failure to protect claims; (4) Eighth Amendment deliberate medical indifference claims; (5) Fourteenth Amendment claims related to personal property; (6) Fourteenth Amendment due process claims; (7) First Amendment claims related to Plaintiff's religious freedom; (8) First Amendment retaliation claims; (9) conspiracy claims; (10) claims based upon failure to report or investigate; (11) state law claims; (12) claims based upon violations of DOCCS Rules and Directives; and (13) discrimination claims. See Compl., generally . Plaintiff seeks monetary damages. See id. at 34. For a complete statement of plaintiff's claims, refer to the Complaint.
V. ANALYSIS
Burroughs brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortgage Corp. , 885 F.Supp. 537, 573 (S.D.N.Y. 1995).
" Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).
Because he is proceeding pro se, the allegations in Burroughs's complaint will be construed with the utmost leniency. See, e.g., Haines v. Kerner , 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").
A. Claims Against Defendants Mitchell, Palmer, Terry Burnett, Tim Harding, Don Quinn, Stephen Brown, Tanner Williams, Scott Giguere, Larry Dearborn, Ron Blair, and Tom Renadette
"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia , the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven , 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " Austin v. Pappas , No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson , 790 F.2d 260, 263 (2d Cir. 1986) ) (other citation omitted).
Burroughs names the aforementioned defendants in the list of parties and asserts that these defendants conspired with Matt and Sweat. Compl. at 7-8. However, plaintiff does not plead any facts sufficient to plausibly suggest that these defendants were personally involved in any conduct that violated plaintiff's constitutional rights and therefore the complaint fails to state a cognizable claim against any of these defendants. See Cipriani v. Buffardi , No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted). Accordingly, plaintiff's claims against Mitchell, Palmer, Terry Burnett, Tim Harding, Don Quinn, Stephen Brown, Tanner Williams, Scott Giguere, Larry Dearborn, Ron Blair, and Tom Renadette are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)
*269 for failure to state a claim upon which relief can be granted.
B. First Amendment - Freedom of Speech and Association
Burroughs next claims that defendants violated his First Amendment right to free speech and association. See Compl. at 20, 22-23.
"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier , 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). "Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls." Jones v. N. Carolina Prisoners' Labor Union, Inc. , 433 U.S. 119, 125-26, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (holding that the inmate's status as a prisoner and the operational realities of a prison dictate restrictions on the associational rights among inmates).
While Burroughs vaguely alleges that his First Amendment rights were infringed (see Dkt. No. 17), the complaint contains no facts related to how or when those rights were curtailed or, more importantly, which defendant or defendants were personally involved in the constitutional violations. Accordingly, plaintiff's First Amendment claims related to free speech and association are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.
C. Eighth Amendment
The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. Wilson v. Seiter , 501 U.S. 294, 296-97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ; Estelle v. Gamble , 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia , 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
1. Excessive Force
The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." Blyden v. Mancusi , 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing Hudson v. McMillian , 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ).
In this regard, while "a de minimis use of force will rarely suffice to state a constitutional claim," Romano v. Howarth , 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." Blyden , 186 F.3d at 263 (citing Hudson , 503 U.S. at 9, 112 S.Ct. 995 ).
The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson , 503 U.S. at 7, 112 S.Ct. 995 (citing Whitley v. Albers , 475 U.S. 312, 321-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ); see also Johnson v. Glick , 481 F.2d 1028, 1033 (2d Cir. 1973) ; see also Wilkins v. Gaddy , 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is *270 the core judicial inquiry in excessive force cases-not whether a certain quantum of injury was sustained.").
"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " Scott v. Coughlin , 344 F.3d 282, 291 (2d Cir. 2003) (quoting Romano , 998 F.2d at 105 ).
Burroughs claims that Doe # 5 subjected him to excessive force on June 17 when he "slammed" plaintiff's face into a metal gate and repeatedly threatened him. See Compl. at 10. Plaintiff has identified the time, location, amount of force used, the injuries sustained, and individual involved in the alleged assault. At this early stage of the proceeding, plaintiff's Eighth Amendment excessive force claim against Doe # 5 survives sua sponte review and requires a response.
However, to the extent that the complaint includes an Eighth Amendment claim related to handcuffing, that claim is subject to dismissal. "While handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force." See Lynch ex rel. Lynch v. City of Mount Vernon , 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008). Thus, to sufficiently plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury. Jackson v. City of New York , 939 F.Supp.2d 219, 231 (E.D.N.Y. 2013).
Burroughs claims only that the handcuffs caused his wrists to be "cut." See Compl. at 10. In the absence of any facts alleging a permanent injury as a result of this handcuffing, plaintiff has failed to state a cause of action under § 1983 and this claim will be dismissed.
2. Failure to Protect
Prison officials are required to take reasonable measures to guarantee the safety of inmates in their custody. Farmer v. Brennan , 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1970). The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. See Ayers v. Coughlin , 780 F.2d 205, 209 (2d Cir. 1985). "Failure to intercede results in liability where an officer observes excessive force being used or has reason to know that it will be." Curley v. Vill. of Suffern , 268 F.3d 65, 72 (2d Cir. 2001).
In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." Walsh v. Goord , No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting Farmer , 511 at 837 ). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. Morales v. New York State Dep't of Corr. , 842 F.2d 27, 30 (2d Cir. 1988).
Burroughs claims that Doe # 6 and Woods were present for, and failed to protect plaintiff from, Doe # 5's use of excessive force. See Compl. at 10, 25. At this juncture, plaintiff's allegations are sufficient to survive this initial review and require a response from these defendants.
With regard to Cuomo, however, the complaint is wholly insufficient to establish his personal involvement in *271 the alleged use of excessive force. Where, as, here, the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. See Polk Cnty. v. Dodson , 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ; Richardson v. Goord , 347 F.3d 431, 435 (2d Cir. 2003) ; Wright , 21 F.3d at 501.
In other words, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin , 76 F.3d 72, 74 (2d Cir. 1996). Prior to Iqbal , the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin , 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith , 781 F.2d 319, 323-24 (2d Cir. 1986) ).
The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven , 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon "); see also Hogan v. Fischer , 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [ Iqbal ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing Grullon , 720 F.3d at 139 ).
Importantly, a plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. See Colon , 58 F.3d at 874. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." Gaston v. Coughlin , 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).
Burroughs's complaint is devoid of any allegations which plausibly suggest that Cuomo ordered that plaintiff be assaulted, that Cuomo might have known in advance that plaintiff would be assaulted, that Cuomo witnessed or participated in the alleged assault, that Cuomo created a policy or custom under which the assault occurred, or that Cuomo acted grossly negligently in supervising one or more of his subordinates.
Instead, the facts asserted are hypothetical at best and do not suggest how Cuomo was at all personally aware of the alleged threat of violence against Burroughs. Accordingly, plaintiff's Eighth Amendment claims against Cuomo are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
3. Conditions of Confinement
The Second Circuit, in addressing the needs protected by the *272 Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi , 573 F.2d 118, 125 (2d Cir.1978), rev'd on other grounds sub nom. Bell v. Wolfish , 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ; Lareau v. Manson , 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." Jolly v. Coughlin , 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).
To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " Id. (citation omitted). "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety.' " Brown v. Doe , No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, inter alia, Rhodes v. Chapman , 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult , 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).
With respect to the subjective element, a plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " Jolly , 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " Walker , 717 F.3d at 125 (quoting Jabbar v. Fischer , 683 F.3d 54, 57 (2d Cir. 2012) ).
a. Clinton C.F.
Burroughs claims that Racette, Annucci, and Cuomo violated his Eighth Amendment rights when they "locked down" the facility, turned off the power (for an unspecified amount of time), and denied him a meal for an entire day. See Compl. at 9, 26.
Even accepting these allegations as true, the facts are insufficient to state a cruel and unusual punishment claim under the Eighth Amendment. See Miller v. Campbell , 804 F.Supp. 159, 162 (D. Kan. 1992) (finding that the "brief" suspension of water and electricity during a lockdown was not a serious deprivation of basic human needs); see also Young v. Tryon , No. 12-CV-6251, 2015 WL 309431, at *10 (W.D.N.Y. Jan. 23, 2015), report and recommendation adopted , 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015) (dismissing Eighth Amendment claims arising from temporary deprivations as a result of a lockdown) (citing Walker v. Schriro , No. 11 Civ. 9299, 2013 WL 1234930, *13 (S.D.N.Y. 2013) (allegations that plaintiff was temporarily deprived of food, shower, linens, running water or bathroom were insufficient to state a claim) ). Consequently, Burroughs's Eighth Amendment claims based upon his confinement during the "lockdown" are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
b. Upstate C.F.
Burroughs claims that Doe # 4, Doe # 7, Uhler, and Tabb exposed him to unconstitutional conditions of confinement in the Upstate C.F. SHU. See Compl. at 13-16. In particular, plaintiff claims that he was confined to a cell from June 17 until June 26 without clothing, personal property, commissary, hygiene items, or stamps. See id.
*273 Even assuming Burroughs was deprived of these items, a fourteen-day loss amounts to only a temporary deprivation, not a prolonged or severe constitutional deprivation necessary to satisfy the objective element of the Eighth Amendment. See Trammell v. Keane , 338 F.3d 155, 165 (2d Cir. 2003) (citing Wright v. McMann , 387 F.2d 519, 526 (2d Cir. 1967) ).
Notably, courts have repeatedly held that inconveniences or unpleasantness that a prisoner may endure as a result of a struggle to get adequate basic hygienic items does not rise to the level of unquestioned and serious deprivations of basic human needs necessary to establish an Eighth Amendment violation. Davidson v. Murray , 371 F.Supp.2d 361, 372 (W.D.N.Y. 2005) (quoting Rhodes v. Chapman , 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ); see Salahuddin v. Dalsheim , 94 CIV. 8730, 1996 WL 384898, at *14 (S.D.N.Y. Jul. 9, 1996) (finding that a seven-day deprivation of personal property did not establish an objectively serious deprivation).
Burroughs's allegation that his cell did not have running water or a functioning toilet for four days also fails to rise to the level of a constitutional claim. See Williams v. Gumbula , No. 13-CV-1132-A, 2018 WL 1795547 (W.D.N.Y. Apr. 16, 2018) (concluding that the plaintiff's claim that he suffered inhumane conditions because correction officers refused to turn water on to his cell for nine days fails to support an Eighth Amendment claim) ) (citations omitted). Consequently, plaintiff's Eighth Amendment claims related to his conditions of confinement in the Upstate C.F. SHU are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.[9]
4. Deliberate Medical Indifference
To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. See Farmer v. Brennan , 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
The objective component of an Eighth Amendment deliberate indifference medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hill v. Curcione , 657 F.3d 116, 122 (2d Cir. 2011) (quoting Hathaway v. Coughlin , 99 F.3d 550, 553 (2d Cir. 1996) ) (internal quotation marks omitted).
Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " Chance v. Armstrong , 143 F.3d 698, 703 (2d Cir. 1998) (quoting Hathaway , 99 F.3d at 553 ). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very *274 purpose of causing harm." Hathaway v. Coughlin , 37 F.3d 63, 66 (2d Cir. 1994).
To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. Farmer , 511 U.S. at 837, 114 S.Ct. 1970 ; Chance , 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. Farmer , 511 U.S. at 835, 114 S.Ct. 1970.
Burroughs claims that Fitzgerald refused to provide medical treatment for injuries sustained as a result of the assault by Doe # 5. See Compl. at 11. At the outset, the facts in the complaint do not suggest that plaintiff suffered from a serious medical condition that could have resulted in "death, degeneration, or extreme pain." See Lewis v. Havernack , No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *9 (N.D.N.Y. Mar. 28, 2013) (finding that the plaintiff failed to meet the objective test with allegations that he suffered from facial injuries after being punched once). Indeed, plaintiff concedes that he fabricated a story about the cause of his injury. See Compl. at 11.
Even assuming Burroughs suffered from a serious medical condition, he has not pleaded that Fitzgerald was deliberately indifferent to his medical needs. Plaintiff was examined by Fitzgerald and an Injury Report was prepared. Plaintiff's conclusory allegation that Fitzgerald refused to treat him or send him to a hospital fails to plausibly suggest that the defendant was deliberately indifferent to any serious medical need. At this juncture, plaintiff has not pleaded that Fitzgerald was aware of "a substantial risk" to plaintiff's health. See Salahuddin v. Goord , 467 F.3d 263, 280 (2d Cir. 2006) (reasoning that the charged official must act or fail to act "while actually aware of a substantial risk that serious inmate harm will result").
Burroughs's Eighth Amendment deliberate medical indifference claims against Doe # 1, Doe # 4, Doe # 5, Doe # 6, Doe # 7, Woods, Shattuck, Uhler, and Tabb are also subject to dismissal. Plaintiff alleges that the aforementioned non-medical personnel refused his repeated requests for medical attention. See Compl. at 13, 14, 15.
"Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " Baumann v. Walsh , 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).
In this case, Burroughs's conclusory allegations related to requests for treatment for non-specific injuries do not suggest that these defendants intentionally delayed, denied, or interfered with plaintiff's treatment. Plaintiff has not pleaded that he told these defendants that he was in extreme pain and thus plaintiff has failed to make a plausible showing of deliberate indifference to his serious dental needs by these defendants.
Consequently, Burroughs's Eighth Amendment deliberate medical indifference claims against Fitzgerald, Doe # 1, Doe # 4, Doe # 5, Doe # 6, Doe # 7, Woods, Shattuck, Uhler, and Tabb are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.
However, a different conclusion is reached with respect to Doe # 3. Burroughs claims that when he arrived at Upstate C.F., he had blood on his neck and *275 clothes, cuts on his wrist, and he could not speak. See Compl. at 12. Plaintiff alleges that Doe # 3 acted with deliberate indifference because, despite his request for treatment, she ignored his condition because he complained that he was assaulted by Doe # 5. See id.
Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, see e.g. Sealed Plaintiff v. Sealed Defendant , 537 F.3d 185, 191 (2d Cir. 2008), Burroughs's Eighth Amendment claims against Doe # 3 survives sua sponte review and require a response.
D. Fourteenth Amendment - Deprivation of Property
Burroughs alleges that Shattuck, Doe # 2, Doe # 8, Carpenter, and Nerf violated his Fourteenth Amendment rights when they confiscated and destroyed his personal property and denied his property claims. See Compl. at 15-18.
The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. Hudson v. Palmer , 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (citing Parratt v. Taylor , 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) ); Davis v. New York , 311 F. App'x 397, 400 (2d Cir. 2009) (holding an alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting Hudson , 468 U.S. at 533, 104 S.Ct. 3194 ).
Importantly, "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia , a Court of Claims action." Jackson v. Burke , 256 F.3d 93, 96 (2d Cir. 2001). Burroughs does not allege that adequate post-deprivation state law remedies to recover the value of his property were unavailable and therefore he cannot state a claim for relief pursuant to Section 1983. See Love v. Coughlin , 714 F.2d 207, 208-09 (2d Cir.1983) (per curiam); see also Aziz Zarif Shabazz v. Pico , 994 F.Supp. 460, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his property in violation of his due process rights). For the reasons set forth herein, the Fourteenth Amendment claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.
E. Due Process - SHU and Keeplock Confinement
To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. See Ortiz v. McBride , 380 F.3d 649, 654 (2d Cir.2004) ; Tellier v. Fields , 280 F.3d 69, 79-80 (2d Cir. 2000) ; Hynes v. Squillace , 143 F.3d 653, 658 (2d Cir. 1998) ; Bedoya v. Coughlin , 91 F.3d 349, 351-52 (2d Cir. 1996).
"Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Ortiz , 380 F.3d at 654 (quoting Sandin v. Conner , 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ); Tellier , 280 F.3d at 80 ; Hynes , 143 F.3d at 658.
In Sandin v. Conner , 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a *276 protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84, 115 S.Ct. 2293 ; Tellier , 280 F.3d at 80 ; Hynes , 143 F.3d at 658.
To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. See Welch v. Bartlett , 196 F.3d 389, 393 (2d Cir. 1999) ; see also Vega v. Lantz , 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' ") (quoting Sandin , 515 U.S. at 484, 115 S.Ct. 2293 ).
When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. See Arce v. Walker , 139 F.3d 329, 336 (2d Cir. 1998) ; Colon v. Howard , 215 F.3d 227, 231 (2d Cir. 2000) (while not the only factor to be considered, the duration of a disciplinary confinement remains significant under Sandin ).
Specifically, while under certain circumstances confinement in the SHU of less than 101 days could be shown to meet the atypicality standard under Sandin (see Colon , 215 F.3d at 232 n.5 ), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." Ortiz , 380 F.3d at 654 ; Colon , 215 F.3d at 231.
It is the length of the actual punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. Scott v. Albury , 156 F.3d 283, 287-88 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read Sandin [v. Conner] to require that we look to actual punishment in making this determination").
In order to state a viable cause of action for a violation of due process, Burroughs must first plead facts to establish that he had a liberty interest in being free from confinement in the SHU.
a. Upstate C.F. SHU
Burroughs claims that Doe # 4 and Doe # 7 violated his Fourteenth Amendment rights when they transferred him to the SHU without a misbehavior report or disciplinary hearing. See Compl. at 13.
However, the facts of the complaint suggest that, at most, Burroughs was confined to Upstate C.F. SHU for fourteen days, a period of time which in and of itself would not implicate a liberty interest. Thus, in order to determine whether plaintiff possessed a protected liberty interest in avoiding the SHU confinement that he experienced during the fourteen-day period in question, it is necessary to consider not simply the length of that confinement but the specific circumstances of that confinement (and whether they were harsher than ordinary). Brooks v. DiFasi , 112 F.3d 46, 49 (2d Cir.1997) ; Vasquez v. Coughlin , 2 F.Supp.2d 255, 259 (N.D.N.Y.1998) (McAvoy, C.J.).
*277 As discussed supra , Burroughs claims that he was deprived of personal property, hygiene products, stamps, and commissary for fourteen days. See Compl. at 14. Additionally, plaintiff asserts that his cell did not have a functioning toilet or running water for four days. See id.
As presently pleaded, these facts do not suggest that Burroughs was deprived of a liberty interest. See Thompson v. LaClair , No. 9:08-CV-37 (FJS/DEP), 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (the loss of commissary privileges does not qualify as a serious hardship); see also Williams , 2018 WL 1801201, at *9 (collecting cases) ("the brief loss of in-cell water privileges certainly does not qualify as a protected liberty interest").
While Burroughs alleges that the conditions of his confinement "were less than ideal, he has not shown that they were so atypical compared to ordinary prison life as to give rise to a protected liberty interest, particularly in light of the relative brevity of that confinement." Allah v. Poole , 506 F.Supp.2d 174, 191 (W .D.N.Y. 2007) (holding that brief deprivation of hygiene items does not impose a significant hardship).
The fourteen-day continued confinement at issue did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life (conferring on Plaintiff a right to procedural due process). Burroughs has therefore failed to plead any facts that plausibly suggest that his confinement in Upstate C.F. SHU imposed an atypical and significant hardship, and therefore plaintiff has failed to plead the existence of a valid liberty interest with respect to his SHU confinement.
b. Great Meadow C.F. SHU
Burroughs asserts claims related to his keeplock confinement at Great Meadow C.F. Specifically, plaintiff claims that Melecio conducted an untimely disciplinary hearing and coerced plaintiff into pleading guilty to a false misbehavior report. See Compl. at 18. As discussed supra , before discussing alleged procedural violations, plaintiff must first plead facts to establish that he had a liberty interest in being free from confinement in keeplock.
With respect to his keeplock confinement, Burroughs has failed to establish that he was deprived of a liberty interest because he did not plead facts related to how long he was actually confined. See Mingo v. Fischer , No. 14-CV-0235 (MAD/TWD), 2014 WL 2918599, at *5 (N.D.N.Y. June 26, 2014) ("[W]hile plaintiff was sentenced to SHU confinement, he does not indicate the length of his sentence, which is a critical component of the Fourteenth Amendment due process inquiry"). Moreover, the conditions that plaintiff allegedly endured during his confinement did not suggest that he suffered an atypical and significant hardship.
Even assuming that Burroughs's SHU confinement implicated a liberty interest, as presently pleaded the complaint fails to state a claim against Melecio based upon the Fourteenth Amendment and due process.
The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. Sira v. Morton , 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, Wolff v. McDonnell , 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ). The hearing officer's findings must be supported by "some reliable evidence."
*278 Id. (citing, inter alia, Superintendent v. Hill , 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) ).
While Burroughs does not cite to any specific statute or regulation, construed liberally the claims regarding the timeliness of the hearing are based upon 7 N.Y.C.R.R. § 251-5.1, which provides:
(a) "Where an inmate is confined pending a disciplinary hearing or a superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.
(b) The disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.
7 N.Y.C.R.R. § 251-5.1
However, a violation of the rule set forth in 7 N.Y.C.R.R. § 251-5.1, without more, is not enough to establish a federal constitutional claim. Barnes v. Henderson , 628 F.Supp.2d 407, 412-13 (W.D.N.Y. 2009) (collecting cases) (concluding that the failure to provide a speedy hearing under the state regulation is not enough to establish a federal due process violation).
Burroughs alleges that his hearing was untimely but does not allege that the hearing resulted in a constitutional violation. Further, the complaint lacks any facts related to when the underling ticket was issued, when the hearing commenced, or the evidence/testimony presented and rejected or considered at the hearing.
The complaint also lacks any facts suggesting how Burroughs was prejudiced by any alleged procedural errors or that the errors affected the outcome of the hearing. See Powell v. Coughlin , 953 F.2d 744, 750 (2d Cir.1991) ; see also Colantuono v. Hockeborn, 801 F.Supp.2d 110, 115 (W.D.N.Y. 2011) ("Plaintiff must show that the outcome of the hearing likely would have been different had [the witnesses] been called.") (citation omitted).
Based upon the aforementioned analysis, Burroughs's Fourteenth Amendment claims against Melecio are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
Burroughs also claims that the hearing was precipitated by a false misbehavior report issued by Cucchi. Unfortunately, however, it is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder , 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout , 808 F.2d 949, 951 (2d Cir. 1986), cert. denied , 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988) ); accord, Pittman v. Forte , No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); see also Santana v. Olson , No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").
In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations *279 which occur at a subsequent disciplinary hearing." Williams v. Smith , 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).
"The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." Santana v. Olson, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007).
As discussed supra, Burroughs has failed to plead that he suffered any constitutional violation as a result of the hearing related to this misbehavior reports. The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." Boddie , 105 F.3d at 862. Plaintiff's retaliation claim, related to misbehavior report, is discussed infra.
F. First Amendment Religious Claims
Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. See Ford v. McGinnis , 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier , 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) ).
"Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." Id. (citing Benjamin v. Coughlin , 905 F.2d 571, 574 (2d Cir. 1990) ).
To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials does not further some legitimate penological objective. Farid v. Smith , 850 F.2d 917, 926 (2d Cir.1988) (citations omitted).
A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord , 467 F.3d 263, 274-75 (2d Cir. 2006) (citing Ford , 352 F.3d at 591 ).[10] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.
*280 Ford , 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jolly v. Coughlin , 76 F.3d 468, 476-77 (2d Cir.1996).
Burroughs's complaint lacks any facts establishing that plaintiff's religious beliefs were "sincerely held" or that his beliefs were "substantially burdened." Regarding plaintiff's Koran, prayer rug, Kufi, and Ramadan meal, plaintiff claims that defendants refused to provide these items on one occasion but failed to plead facts suggesting that this de minimis interference substantially burdened his religious beliefs. See Kravitz v. Fischer , No. 9:12-CV-1011 (LEK/TWD), 2014 WL 4199245, at *13 (N.D.N.Y. Aug. 22, 2014) (dismissing the plaintiffs' First Amendment claim regarding the Chanukah candles on the grounds that denying the plaintiffs Chanukah candles on a single occasion was de minimis and did not substantially burden their sincerely held religious beliefs).
The allegations, without more, fail to plausibly suggest that any defendant burdened Burroughs's right to freely practice his religion. Thus, plaintiff's First Amendment religious claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
G. First Amendment - Retaliation Claims
To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle , 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ; Gill v. Pidlypchak , 389 F.3d 379, 380 (2d Cir. 2004) (citing Dawes v. Walker , 239 F.3d 489, 492 (2d Cir. 2001) ).
The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." Dawes , 239 F.3d at 491, overruled on other grounds by Swierkiewicz v. Sorema N.A. , 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing Flaherty v. Coughlin , 713 F.2d 10, 13 (2d Cir. 1983) ); Franco v. Kelly , 854 F.2d 584, 590 (2d Cir. 1988).
A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord , 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " Gill , 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. Id.
Conduct that is de minimis does not give rise to actionable retaliation. What is de minimis varies according to *281 context. Dawes , 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." Dawes, 239 F.3d at 491 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam) ).
If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Dawes, 239 F.3d at 493.
a. Claims Against Doe # 3, Doe # 4, Doe # 7, Uhler, Tabb, and Payton
Burroughs alleges that Doe # 3, Doe # 4, Doe # 7, Uhler, and Payton were motivated to retaliate after plaintiff verbally complained that he was assaulted by Doe # 5 at Clinton C.F. Plaintiff alleges the following:
- In June 2015, Doe # 3 refused to provide medical treatment after Plaintiff complained that he was assaulted by Doe # 5;
- In June 2015, Doe # 4 and Doe # 7 confined Plaintiff to the SHU without a misbehavior report or disciplinary hearing in retaliation for Plaintiff's verbal complaints about the assault by Doe # 5.
- In June 2015, Uhler refused to provide medical attention, supplies, personal property, or commissary in retaliation for Plaintiff's verbal complaints about the assault by Doe # 5.
- In August 2015, Payton refused to document Plaintiff's complaints related to the assault.
At this juncture, Burroughs's retaliation claims against Doe # 3, Doe # 4, Doe # 7, and Uhler survive sua sponte review and require a response. See Guillory v. Haywood , No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *18 (N.D.N.Y. Jan. 21, 2015) (holding that an inmate's verbal complaints to corrections officers and prison officials have been found to constitute activity protected by the First Amendment) (collecting cases).
A different conclusion is reached with respect to Payton. Burroughs claims that Payton failed to document or investigate his assault claims in retaliation for making claims related to that assault.
Courts have held that "failure to investigate a complaint cannot be considered an adverse ... action taken in retaliation for the filing of that same complaint" because it "will not ordinarily constitute a threat of further harm[.]" Fincher v. Depository Trust & Clearing Corp. , 604 F.3d 712, 721-22 n. 8 (2d Cir. 2010) ; see Islam v. Goord , No. 05 Civ. 7502, 2006 WL 2819651, at *6 (S.D.N.Y. Sept. 29, 2006) (holding that the failure to adequately investigate complaints is "qualitatively different in kind from the types of harms that courts in this circuit have typically considered significant enough to constitute 'adverse actions' ").
Consequently, Burroughs's retaliation claims against Payton is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.
b. Claims Against Winchell, Cucchi, Nerf, and Carpenter
Burroughs asserts the following retaliation claims against Winchell, Cucchi, Nerf, and Carpenter:
*282 - In July 2015, August 2015, September 2015, and October 2015, Winchell and Cucchi compelled Plaintiff to submit to urine tests and fabricated a false positive result in retaliation for Plaintiff's grievances.
- In November 2015, Cucchi issued a false misbehavior report.
- In December 2015, Nerf and Carpenter denied Plaintiff's property claims.
It is well-settled that filing a grievance is constitutionally protected conduct. Johnson v. Eggersdorf , 8 F. App'x 140, 144 (2d Cir. 2001) ; Graham v. R.J. Henderson , 89 F.3d 75, 80 (2d Cir. 1996).
Even assuming Burroughs sufficiently pleaded that he engaged in protected conduct and suffered an adverse action, plaintiff has failed to plead a causal connection between his grievances and the adverse actions.
"As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." Hare v. Hayden , 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ; see also Roseboro v. Gillespie , 791 F.Supp.2d 353, 369 (S.D.N.Y. 2011) (collecting cases).
But Burroughs did not file any grievances or complaints against Winchell, Cucchi, Nerf, or Carpenter. In addition, the complaint lacks facts identifying what grievances, letters, or complaints motivated these alleged retaliatory actions, when those complaints were filed, who they were filed against and, more importantly, how these defendants became aware of the grievances and complaints. See Davidson v. Talbot , No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the strength or validity of such claim."); see Guillory v. Haywood , No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred).
As Burroughs has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, plaintiff has not stated a plausible claim for retaliation against these defendants in violation of the First Amendment and the claims are dismissed without prejudice. For these reasons, plaintiff's retaliation claims against the aforementioned defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
c. Claims Against Doe # 5, Doe # 6, Woods, and Shattuck
Burroughs claims that Doe # 5, Doe # 6, Woods, and Shattuck retaliated after he refused to provide information related to the escape:
- In June 2015, Doe # 5 subjected Plaintiff to excessive force due to Plaintiff's refusal to answer questions related to the escape;
- Doe # 6 and Woods failed to protect Plaintiff from the alleged assault by Doe # 5 due to Plaintiff's refusal to answer questions related to the escape;
- In June 2015, Shattuck refused to provide Plaintiff with his property and religious items due to his refusal to respond to questions related to the escape.
See Compl. at 10-11; 15-16.
Mindful of the requirement to liberally construe pro se pleadings, see, e.g., *283 Sealed Plaintiff v. Sealed Defendant , 537 F.3d 185, 191 (2d Cir. 2008), the complaint alleges enough to warrant a responsive pleading from these defendants with respect to the retaliation claims. See Jackson v. Johnson , 15 F.Supp.2d 341, 364 (S.D.N.Y. 1998) (assuming without deciding that the plaintiff has a constitutional right not to "snitch," satisfying the first prong for the test for retaliation); see also Cooper v. Beard , No. 06-1071, 2006 WL 3208783, at *12 (E.D. Pa. Nov. 2, 2006) ("[b]ecause being labeled a snitch could place an inmate's life in danger, it follows that an inmate's refusal to become one is protected.").
d. Remaining Retaliation Claims
In a conclusory manner, Burroughs also contends that Cuomo, Annucci, Racette, Doe # 1, Fitzgerald, Doe # 2, Doe # 8, Tabb, and Melecio retaliated against him. See Compl. at 22.
However, Burroughs has not pleaded that he engaged in any protected conduct of which these defendants were aware to suggest that these defendants were motivated to retaliate against him. For these reasons, plaintiff's retaliation claims against the aforementioned defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
H. Conspiracy
Burroughs claims that defendants conspired to "cover up" plaintiff's injuries and the excessive force incident. See Compl. at 12-20.
A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. Cnty. of Nassau , 292 F.3d 307, 324-25 (2d Cir. 2002).
Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Ciambriello , 292 F.3d at 325 ; Webb v. Goord , 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").
"[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " Flores v. Levy , No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting Twombly , 550 U.S. at 554, 127 S.Ct. 1955 ).
As presently pleaded, Burroughs's complaint is devoid of facts as to the time, place, or objective of the alleged conspiracy. Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes conclusory statements that the defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." Dorsey v. Fisher , No. 09-CV-1011 (GLS), 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted). Thus, plaintiff's conspiracy claims are dismissed without prejudice for failure to state a claim.
*284 I. Failure To Report
Burroughs attempts to assert a separate constitutional claim against defendants for failing to report and/or investigate his complaints. See Compl. at 7-8.
However, "courts within the Second Circuit have determined that '[t]here is ... no constitutional right to an investigation by government officials." Bernstein v. New York , 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases). Accordingly, this claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.
J. State Law Claims
District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000).
1. Negligence
"Under New York law ... a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P. , 737 F.3d 166, 177 (2d Cir. 2013) (quoting Alfaro v. Wal-Mart Stores, Inc. , 210 F.3d 111, 114 (2d Cir. 2000) ).
Because Burroughs's negligence claims arise out of the same facts upon which his federal constitutional claims are based, the Court will exercise supplemental jurisdiction over these claims as an alternative to his First Amendment retaliation and Eighth Amendment claims.
In particular, Burroughs has asserted a negligence claim against all of the defendants related to their failure to protect. See Compl. at 31-32. With regard to the supervisory defendants, however, plaintiff has failed to allege facts which plausibly suggest that these defendants breached a duty owed to him. Indeed, the complaint is devoid of any allegations which plausibly suggest that Racette, Annucci, or Cuomo knew or should have known that plaintiff would be assaulted.
With regard to Doe # 5, Doe # 6, and Woods, under New York law, "once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." Vilkhu v. City of New York , No. 06-CV-2095, 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) (internal quotation marks and citations omitted). Accordingly, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." Id. (internal quotation marks and citations omitted); see also Naccarato v. Scarselli , 124 F.Supp.2d 36, 45 (N.D.N.Y. 2000) (dismissing negligent infliction of emotional distress claim based on the same allegations as those giving rise to excessive force and assault claims).
In light of this law, Burroughs's state law claim for negligence is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
2. Negligent Infliction of Emotional Distress
A claim for negligent infliction of emotional distress based on conduct that directly impacts a plaintiff requires a showing that the plaintiff "suffers emotional distress caused by defendant's breach of *285 a duty which unreasonably endangered [plaintiff's] own physical safety." Baker v. Dorfman , 239 F.3d 415, 421 (2d Cir. 2000) (internal quotation marks and citation omitted).
The duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Dzwonczyk v. Syracuse City Police Dep't , 710 F.Supp.2d 248, 272 (N.D.N.Y. 2008). "This duty is far more specific than the more generalized duty to avoid negligently injuring another." Druschke v. Banana Republic, Inc. , 359 F.Supp.2d 308, 315 (S.D.N.Y. 2005) ); see also Hazan v. City of New York , No. 98-CV-1716, 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff") (internal citations omitted).
Upon review, Burroughs has failed to allege any special duty owed to him by defendants aside from the general duty to all inmates not to use excessive force that violates their constitutional rights. Accordingly, plaintiff's state law claim for negligent infliction of emotional distress is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
3. Intentional Infliction of Emotional Distress
Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." Bender v. City of N.Y. , 78 F.3d 787, 790 (2d Cir. 1996).
"[T]he statute of limitations for intentional torts such as ... intentional infliction of emotional distress is one year in New York." Doumin v. Carey , No. 6:06-CV-1119 (NPM/DEP), 2008 WL 4241075, at *3 (N.D.N.Y. Sept. 12, 2008) (citing Brewton v. City of N.Y. , 550 F.Supp.2d 355, 370 n.13 (E.D.N.Y. 2008) ).
Burroughs's intentional infliction of emotional distress claims are based on the same conduct that gives rise to his federal claims. See Compl. at 32-33. As set forth above, the complaint was filed, at the earliest, more than one year after the alleged constitutional violations occurred. Accordingly, plaintiff's state law claim for intentional infliction of emotional distress is untimely filed and therefore dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
K. Violation of DOCCS Directives
Burroughs claims that defendants violated DOCCS' directives related to his personal property and confinement in the SHU. See Compl. at 15, 16, 28.
A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. See Hyman v. Holder , No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim).
"A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." Cusamano v. Sobek , 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); see also Patterson v. Coughlin , 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not *286 itself violate the Constitution and is not alone actionable under § 1983..."); Fluent v. Salamanca Indian Lease Auth. , 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).
Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim. Accordingly, to the extent that Burroughs attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted. See McAllister v. Call , No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).
L. Discrimination
Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq. ("Title VI"), provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d.
"To state a claim for a violation of Title VI, a plaintiff must show, through specific factual allegations that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendants' action." Joseph v. Metro. Museum of Art , No. 1:15-CV-9358, 2016 WL 3351103, at *3 (S.D.N.Y. June 15, 2016), aff'd , 684 Fed. App'x 16 (2d Cir. Mar. 22, 2017), cert. denied sub nom . --- U.S. ----, 138 S.Ct. 385, 199 L.Ed.2d 280 (2017).
"In order to establish intentional discrimination, Plaintiff 'must show that the decision maker selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group.' " Id. (quoting Soberal-Perez v. Heckler , 717 F.2d 36, 42 (2d Cir. 1983) (internal quotation marks, citation, and alterations omitted) ).
Importantly, however, "Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding." Goonewardena v. New York , 475 F.Supp.2d 310, 328 (S.D.N.Y. 2007). Accordingly, Burroughs's Title VI claims against defendants are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.
VI. CONCLUSION
Therefore, it is
ORDERED that
1. Plaintiff's first in forma pauperis application (Dkt. No. 9) is DENIED ;
2. Plaintiff's second in forma pauperis application (Dkt. No. 12) is GRANTED ;[11]
3. The Clerk of the Court shall provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing *287 fee of $350.00 pursuant to 28 U.S.C. § 1915 ;[12]
4. The Clerk of the Court shall provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office;
5. The following claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims against Mitchell, Palmer, Terry Burnett, Tim Harding, Don Quinn, Stephen Brown, Tanner Williams, Scott Giguere, Larry Dearborn, Ron Blair, Tom Renadette; (2) First Amendment claims related to freedom of speech and association; (3) Eighth Amendment excessive force claims against Cuomo; (4) Eighth Amendment claims related to conditions of confinement; (5) Eighth Amendment deliberate medical indifference claims against Fitzgerald, Doe # 1, Doe # 4, Doe # 5, Doe # 6, Doe # 7, Woods, Shattuck, Uhler, and Tabb; (6) Fourteenth Amendment claims related to personal property; (7) Fourteenth Amendment due process claims related to SHU and keeplock confinement; (8) First Amendment religious freedom claims; (9) First Amendment retaliation claims against Winchell, Cucchi, Nerf, Carpenter, Fitzgerald, Doe # 1, Doe # 2, Doe # 8, Payton, Tabb, Melecio, Racette, Cuomo, and Annucci; (10) conspiracy claims; (11) constitutional claims related to the failure to investigate and/or report; (12) state law claims; (13) discrimination claims; and (14) constitutional claims related to violations of DOCCS directives;
6. If plaintiff wishes to pursue any claim that has been dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint must entirely replace the original complaint and therefore incorporation of prior claims is not permitted;
7. The following claims survive sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response: (1) Eighth Amendment excessive force claim against Doe # 5; (2) Eighth Amendment failure-to-protect claims against Doe # 6 and Woods; (3) Eighth Amendment deliberate medical indifference claim against Doe # 3; and (4) First Amendment retaliation claims against Doe # 3, Doe # 4, Doe # 5, Doe # 6, Doe # 7, Woods, Shattuck, and Uhler;
8. Plaintiff is advised that the United States Marshals Service cannot effect service on an unidentified defendant. In the event that plaintiff wishes to pursue any claims against John Doe, he must take reasonable steps to ascertain the identity of the defendant. Upon learning the identity of the unnamed defendant, plaintiff must amend his complaint to properly name him or her as a defendant. If plaintiff fails to ascertain the identity of the defendant so as to permit the timely service of process, all claims against that individual will be dismissed;
9. Mitchell, Cuomo, Annucci, Doe # 1, Doe # 2, Doe # 8, Nerf, Payton, Racette, Terry Burnett, Tim Harding, Don Quinn, Stephen Brown, Tanner Williams, Palmer, Scott Giguere, Larry Dearborn, Ron Blair, Tom Renadette, Fitzgerald, Tabb, Melecio, *288 Winchell, Cucchi, and Carpenter are DISMISSED as defendants herein;
10. Upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon Doe # 3, Doe # 4, Doe # 5, Doe # 6, Doe # 7, Woods, Shattuck, and Uhler;
11. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order;
12. A response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;
13. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;
14. Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel ;
15. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket ;
16. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;
17. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;
18. Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action ; and
19. The Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.
IT IS SO ORDERED.

On June 12, 2018, this case was administratively closed due to plaintiff's failure to submit a certified IFP application and the Inmate Authorization Form required in this District. Dkt. No. 4. On June 28, 2018, after plaintiff remedied these deficiencies, the matter was reopened. Dkt. No. 11.

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams , 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The complaint includes exhibits. See Dkt. No. 1-1. To the extent that these exhibits are relevant to the incidents described in the Complaint, they will be considered here. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (deeming complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

The documents annexed to the complaint contradict the factual allegations related to the dates of plaintiff's confinement at Upstate C.F. See Dkt. No. 1-1 at 2.

An inmate is "fishing" when he uses a bed sheet as a "line" to pass items back and forth between gates with other inmates. Compl. at 15.

It is assumed that plaintiff is referring to DOCCS form # 2064 entitled "Personal Property Transferred." See http://www.DOCCS.NY.gov (last visited Aug. 23, 2018).

The complaint lacks information related to when the misbehavior report was issued, when it was received by plaintiff, or the sum and substance of the alleged violations.

According to plaintiff's Inmate Transfer History, he was transferred from Great Meadow C.F. to Attica C.F. on September 2, 2015. See Dkt. No. 1-1 at 2.

With respect to Doe # 4 and Doe # 7, the complaint lacks facts suggesting that these defendants were personally involved with, or responsible for, the conditions of plaintiff's confinement. Plaintiff has not pleaded any facts suggesting that he complained to Doe # 4 or Doe # 7 about the conditions in the SHU. Thus, plaintiff has failed to sufficiently allege that these defendants acted with a deliberate state of mind. See Toliver v. Dep't of Corrs. , No. 10 Civ. 6298, 2012 WL 4510635, at *9 (S.D.N.Y. Apr. 10, 2012) (dismissing the deliberate indifference claim for failure to plead facts identifying a responsible official who acted with a sufficiently culpable state of mind).

The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in Emp't Div. v. Smith , 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " Ford , 352 F.3d at 592 (quoting Emp't Div. , 494 U.S. at 887, 110 S.Ct. 1595 ); see also Williams v. Does , 639 F. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); Holland v. Goord , 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, the substantial-burden test has been applied in this matter.

Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein , No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York , 607 F.3d 18, 21 (2d Cir. 2010) ).